UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MVP HEALTH PLAN, INC.,

                Plaintiff,

      -against-                                          1:13-CV-1578 (LEK/CFH)

OPTUMINSIGHT, INC.,

                Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff MVP Health Plan, Inc. ("MVP" or "Plaintiff") alleges various claims arising out of a contractual relationship with Defendant OptumInsight, Inc. ("Optum" or "Defendant"). Dkt. No. 1 ("Complaint"). Presently before the Court is Defendant's Motion to dismiss certain claims as duplicative pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 15 ("Motion"); 15-2 ("Defendant's Memorandum"). For the following reasons, the Motion is granted.

**II.    BACKGROUND**[1]

Plaintiff is a not-for-profit health care plan provider, offering employer group, individual, Medicare Advantage, and Medicaid health care plans. Compl. ¶¶ 2, 12. Defendant provides analytics, technology, actuarial, and consulting services to businesses in the healthcare industry. Id. ¶ 4.

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

For its Medicare health care plans, Plaintiff submits bids annually to the Center for Medicare and Medicaid Services ("CMS"). Id. ¶ 14. To prepare its bids, Plaintiff entered into annual agreements with Defendant for services between 2006 and 2012. Id. ¶¶ 17, 21. Plaintiff provided Defendant with "benefit cost-sharing information," which Defendant utilized to create a bid pricing tool worksheet ("BPTW"). Id. ¶¶ 18-19, 24. Plaintiff then incorporated the BPTW into its final bid to CMS. Id. If Plaintiff's bids were accepted, it was required to provide health care coverage within the pricing parameters set forth in the bids. Id. ¶ 15.

In 2012, as in previous years, the parties entered into an agreement (the "2012 Agreement") to provide actuarial services related to 2013 Medicare bids. Id. ¶ 22. In June 2012, Defendant submitted its work product to Plaintiff, who then submitted bids to CMS. Id. ¶¶ 27-31. Plaintiff fully performed its obligations under the 2012 Agreement by providing Defendant with all necessary information to produce the BPTW, as well as paying all of Defendant's invoices. Id. ¶¶ 33-34. However, "Optum carelessly and in violation of the standard of care required of competent actuaries, and in violation of the 2012 Agreement, failed to correctly apply and utilize MVP's cost-sharing information to calculate formulas that it utilized in its BPT worksheet." Id. ¶ 26. Specifically, Defendant failed to carry the cost-sharing assumptions forward from 2012 to 2013, as it had in prior years, which resulted in inaccurate Medicare bids. Id. ¶¶ 42-47. Due to the inaccurate bids, which Plaintiff was obligated to fulfill, Plaintiff sustained significant monetary losses. Id. ¶¶ 49-52.

In the Complaint, Plaintiff alleges the following claims: (1) breach of contract; (2) negligence; (3) gross negligence; (4) negligent misrepresentation; (5) unjust enrichment; (6) quantum meruit; and (7) return of moneys paid under the 2012 Agreement. Compl. ¶¶ 53-101.

2

Plaintiff seeks monetary damages. See id. Defendant moves to dismiss counts two through four (the "tort claims") and five and six (the "quasi-contract claims") as duplicative of the breach of contract claim. See generally Mot.

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV. DISCUSSION

### A. Tort Claims

Defendant argues that Plaintiff's tort claims should be dismissed as duplicative of its breach of contract claim because the underlying facts and the damages sought in each are virtually identical. Def.'s Mem. at 2-5.[2]

"Generally, a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action particularly where . . . both seek identical damages." Envirocon, Inc. v. Alcoa, Inc., No. 06-CV-0549, 2006 WL 2460640, at *3 (N.D.N.Y. Aug. 23, 2006) (quoting Reade v. SL Green Operating P'ship, LP, 817 N.Y.S.2d 230, 231 (App. Div. 2006)). However, a breach of contract will give rise to a tort claim where a legal duty independent of the contract itself has been violated. Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 58 (2d Cir. 2012) (citing Clark-Fitzpatrick v. Long Island R.R. Co., 516 N.E.2d 190, 193-94 (N.Y. 1987)). Such "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." Clark-Fitzpatrick, 516 N.E.2d at 193-94. If, however, the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative. See New York Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995).

---

[2] Although not explicitly stated, the parties appear to agree that this dispute is governed by New York law. See Compl. ¶¶ 7-12; Def.'s Mem. at 1 n.1.

4

An independent duty sufficient to support a tort claim alongside breach of contract has been found where: (1) the defendant is engaged in an occupation subject to professional malpractice claims, or (2) the nature of the damages sought implicates a larger public interest. See Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F. 3d 8, 18 (2d Cir. 2000); Avazpour Networking Servs., Inc. v. Falconstor Software, Inc., 937 F. Supp. 2d 355, 362-64 (E.D.N.Y. 2013). Defendant argues that it has no independent or special duty to Plaintiff—their relationship is defined exclusively by the contract. Def.'s Mem. at 5. Plaintiff responds that Defendant's role as an actuary imposes a separate and independent professional duty. Dkt. No. 16 ("Plaintiff's Memorandum") at 9.

*1. Professional Malpractice*

New York law provides that "[b]ecause an actuary is not required to be licensed, is not regulated, and is not subject to a State-created disciplinary system, an actuary is not a 'professional' for purposes of a malpractice cause of action." Health Acquisition Corp. v. Program Risk Mgmt., Inc., 964 N.Y.S.2d 554, 557 (App. Div. 2013) (citing Castle Oil Corp. v Thompson Pension Empl. Plans, 750 N.Y.S.2d 629, 631 (App. Div. 2002)); see also Chase Scientific Research v. NIA Group, 749 N.E.2d 161, 166-67 (N.Y. 2001). However, an actuary who owes a fiduciary duty—one who exercises "superiority and influence on the other"—can be held liable for the negligent performance of its services. AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 896 N.E.2d 61, 68 (N.Y. 2008).

Plaintiff does not allege that Defendant owed it a fiduciary duty. See generally Compl. Rather, Plaintiff alleges that Defendant "owed [it] a *special* duty, independent from its contractual obligations and duties under the 2012 Agreement." See id. ¶¶ 64, 69 (emphasis added). However,

5

Plaintiff does not argue that a "special" duty gives rise to an independent duty sufficient to bring a tort claim alongside breach of contract. See generally Pl.'s Mem. Instead, Plaintiff cites to a number of cases where actuaries were subject to simultaneous tort and breach of contract claims. See id. at 9. However, those cases are inapplicable to the instant case.

Plaintiff first relies on a set of cases brought against actuaries pursuant to the Employee Retirement Income Security Act ("ERISA"), where the courts noted that the defendant actuaries may be subject to tort liability alongside breach of contract where the defendants served as fiduciaries. Pl.'s Mem. at 9; see also I.B.E.W. Local No. 241 Pension Plan v. First Allmerica Fin. Life Ins. Co., 354 F. Supp. 2d 203, 207 (N.D.N.Y. 2005); Toussaint v. James, No. 01 Civ. 1004, 2003 WL 21738974, at *22 (S.D.N.Y. July 25, 2003); Gerosa v. Savasta, 189 F. Supp. 2d 137, 151 (S.D.N.Y. 2002). However, those cases are not irrelevant for two important reasons. First, Plaintiff has not alleged that Defendant owed Plaintiff a fiduciary duty. Second, those cases all arose out of the context of ERISA, where the defendant actuaries were charged with employee benefit plan administration governed by federal regulations. See, e.g., Gerosa, 189 F. Supp. 2d at 141 (noting that "[a]n actuary is not normally a fiduciary" but "can be considered a fiduciary only if he exercises authority or control or discretion over the plan, or renders investment advice concerning plan assets [under 29 C.F.R. § 2509.75-5]"). No such relationship exists here, as Plaintiff has not alleged that Defendant exercised any level of "authority or control or discretion." These cases involving fiduciary duties under ERISA are therefore inapplicable to this case.

Next, Plaintiff relies on two state decisions, which acknowledge that, while actuaries are not considered professionals for purposes of malpractice claims, they may owe a fiduciary duty where they have "develop[ed] relationships of trust and confidence." Pl.'s Mem. at 9. However, again,

6

Plaintiff has not alleged that Defendant owed it a fiduciary duty, and Plaintiff's reliance on these cases is therefore misplaced.

Finally, the remaining cases upon which Plaintiff relies all concern landlord-tenant disputes. See Pl.'s Mem. at 7. These cases do not support Plaintiff's position, as New York expressly recognizes "a common-law duty, independent of any contractual obligation imposed by [a] lease," incumbent on landlords. Aegis Ins. Servs., Inc. v. The Port Auth. of New York & New Jersey, 435 F. App'x 18, 22 (2d Cir. 2011). As stated *supra*, absent a fiduciary relationship, no such common-law duty exists under New York law for actuaries. Therefore, none of these cases supports Plaintiff's argument that Defendant had a legal duty independent of the contractual relationship.

### 2. *Public Interest*

Although not raised by the parties, the Court briefly addresses whether Plaintiff's tort claims may otherwise stand alongside its breach of contract claim. The New York Court of Appeals has set forth certain factors to consider when determining whether a plaintiff can state a claim for breach of contract alongside a claim in tort in the absence of an independent, professional duty. Avazpour, 937 F. Supp. 2d at 362-63 (citing Sommer v. Fed. Signal Corp., 593 N.E.2d 1365, 1369-72 (N.Y. 1992)). First, courts are to consider the nature of the injury alleged. Sommer, 593 N.E.2d at 1370. Where "the nature of the harm" alleged is "catastrophic," the behavior involved may give rise to a duty of care that exists outside of the contract. Id. Next, courts consider the way in which the injury occurred, and the harm that followed. Id. Courts look to whether the injury resulted from "an abrupt, cataclysmic occurrence," or "a process of failure of the product to perform as anticipated under normal business conditions." Id. Finally, courts consider the nature of the relief sought. Where the plaintiff seeks "enforcement of the bargain, the action should proceed under a contract

theory." Id. at 1369.

Here, all factors weigh in favor of dismissing Plaintiff's tort claims. First, the nature of the harm at issues does not involve widespread catastrophic harm or otherwise implicate the public interest. See Avazpour, 937 F. Supp. 2d at 364-65; cf. Sommer, 593 N.E.2d at 1370-71 (finding failure to transmit fire alarms implicated significant public interest); Reade, 817 N.Y.S.2d at 231 (permitting tort claims to proceed where landlord's failure to protect water supply pipes and to install a flow alarm were part of comprehensive scheme to promote fire safety and "for the protection of the general public"). Moreover, while Plaintiff's damages may be substantial, such harm involves private, and not the public interest. See Avazpour, 937 F. Supp. 2d at 364-65. Second, Plaintiff has not alleged that the harm suffered resulted from "an abrupt, cataclysmic occurrence." Finally, Plaintiff is not seeking relief for a harm suffered beyond the contractual relationship but is merely seeking to enforce the bargain and to acquire damages for the alleged breach thereof.

In sum, New York does not recognize professional malpractice against actuaries in the absence of a fiduciary relationship, which has not been alleged here. Moreover, the alleged harm at issue does not involve widespread catastrophic harm or otherwise implicate the public interest. If "a tort claim does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached, the tort claim cannot be sustained." Metro. West Asset Mgmt., LLC, v. Magnus Funding, Ltd., No. 03 Civ. 5539, 2004 WL 1444868, at *9 (S.D.N.Y. June 25, 2004). Therefore, Plaintiff's tort claims are hereby dismissed.

**B. Quasi-Contract Claims**

Defendant argues that Plaintiff's unjust enrichment and quantum meruit claims should also be dismissed as duplicative of its breach of contract claim. Def.'s Mem. at 6-7.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. . . ." Envirocon, 2006 WL 2460640, at *2 (quoting Clark-Fitzpatrick, 70 N.Y.2d at 388); see also Kimball Assocs., P.A. v. Homer Cent. Sch. Dist., No. 00-CV-897, 2000 WL 1720751, at *8 (N.D.N.Y. Nov. 9, 2000) ("Under New York law, '[t]he existence of a valid and enforceable written contract governing a particular subject . . . precludes recovery in quasi-contract[,] which includes both quantum meruit and unjust enrichment theories.") (citing Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 610 (2d Cir. 1996)). However, "[w]here . . . there is a bona fide dispute whether the contract covers the controversy in issue, 'a plaintiff may proceed upon a theory of quantum meruit as well as contract, and will not be required to elect his or her remedies.'" Fisher v. A.W. Miller Technical Sales, Inc., 762 N.Y.S.2d 205, 207 (App. Div. 2003) (quoting Sforza v. Health Ins. Plan of Greater N.Y., 619 N.Y.S.2d 734, 736 (App. Div. 2004)); see also deCiutiis v. Nynex Corp., No. 95 Civ. 9745, 1996 WL 512150, at *4 (S.D.N.Y. Sept. 9, 1996).

Defendant asserts that courts in this circuit routinely dismiss quasi-contract claims that stem from an express contractual relationship. See Dkt. No. 20 ("Reply") at 2-3; see also Kimball, 2000 WL 1720751, at *8 (dismissing quasi-contract claims at motion to dismiss stage); Pilarczyk v. Morrison Knudsen Corp., 965 F. Supp. 311, 323 (N.D.N.Y. 1997) (dismissing unjust enrichment claim due to the existence of an express contract); Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995) ("This cause of action fails to state a claim because quasi-contractual claims

9

are not available where an express contract exists."); Cross v. State Farm Ins. Co., No. 10-CV-1179, 2011 WL 4916534, at *5 (N.D.N.Y. Oct. 17, 2011) ("Here, the unjust enrichment claim clearly stems from the contractual relationship. Accordingly, the unjust enrichment claim . . . is dismissed.").

Plaintiff argues that it would be premature to dismiss its quasi-contract claims. Pl.'s Mem. at 4. In support, Plaintiff relies exclusively on Envirocon, which denied the defendant's motion to dismiss quasi-contract claims as premature because the defendant had not yet answered the complaint or stated whether it intended to dispute the contract. Id. at 5. Plaintiff argues that, similarly, here, Defendant has not yet answered the Complaint, and has neither admitted nor denied the existence or scope of the alleged contract. Id.

However, Envirocon is distinguishable from this case. In that case, the parties were contracting for the first time, and despite strong evidence of an express agreement, it was unclear whether the defendant intended to dispute the existence or validity of the contract. See id. at *1-2. Here, in contrast, the parties had an ongoing contractual relationship for approximately six consecutive years leading up to the current dispute. See Compl. ¶ 22 ("Consistent with its agreements with Optum in previous years, in early 2012 MVP entered into an agreement with Optum for Optum to provide outside actuarial services to MVP. . . ."). Moreover, the central issue in Envirocon was whether the subject of the dispute—the proper calculation for determining payments upon defendant's termination of the contract—was covered by the contract. See Envirocon, 2006 WL 2460640, at *1-2. Here, the dispute concerns only whether Defendant breached its performance obligations under the contract in properly calculating the BPTW for Medicare bids. Thus, as opposed to Envirocon, here the subject of the dispute is clearly governed by the contractual relationship. See id. Therefore, Envirocon is inapplicable to this case, and

Plaintiff's claims for unjust enrichment and quantum meruit must be dismissed.[3]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 15) to dismiss Counts 2, 3, 4, 5 and 6 of the Complaint (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  October 29, 2014
        Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge

---

[3] In addition to the factual distinctions, the Court also notes that Envirocon does not rely on any legal authority for its holding that the defendant was required to state a position on the contract before moving to dismiss the quasi-contract claims. See Envirocon, 2006 WL 2460640, at *2. As discussed *supra*, courts routinely dismiss quasi-contract claims at the motion to dismiss stage before the defendant has answered the complaint or otherwise stated a position on the validity of the contract. Thus, the Court views Envirocon narrowly, and finds no basis to apply its holding to this case.

11